UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIPING ROCK PARTNERS, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> DAVID LERNER ASSOCIATES, INC., et al., <br><br> Defendants. | Case No. 12-cv-04634-SI <br><br> **ORDER GRANTING MOTION FOR ATTORNEYS' FEES** <br><br> Re: Dkt. No. 112 |

Now before the Court is plaintiffs' motion for attorneys' fees and costs, set for oral argument on August 21, 2015. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby **VACATES** the hearing. For the reasons stated below, the Court **GRANTS** plaintiffs' motion.

## BACKGROUND

Plaintiff Chris Germain is the sole shareholder of plaintiff Piping Rock Partners, Inc. ("Piping Rock"), a California corporation that specializes in the acquisition and management of real estate for investment purposes. Germain is also the founder of REIT Wrecks, a blog where he and others discuss real estate investment trusts ("REITs"). Defendant David Lerner is the president and controlling owner of defendant David Lerner Associates, Inc. ("DLA"), a privately-held brokerage firm incorporated in New York that sells security interests in REITs and other investment products. Defendant George Dobbs, a citizen of New Jersey, was employed at DLA as a registered securities broker from August 2003 to June 2012.

In January 2010, Germain launched a public forum on his blog REIT Wrecks to encourage discussion of non-traded REITs. In response to a reader's post about DLA and Lerner, Germain

posted a reply explaining that DLA and Lerner appeared to be violating a regulation promulgated by the Financial Industry Regulatory Authority (FINRA). After months of publicity – including an article in Bloomberg discussing non-traded REITs and identifying Germain and REIT Wrecks by name, and a blog posting exchange between the Chief Compliance Officer for DLA and Germain – on May 27, 2011, FINRA filed a formal complaint against DLA, alleging various improprieties in connection with the non-traded REITs that DLA managed. In addition, two class action lawsuits were filed against DLA.

Plaintiffs allege that from June 23 to June 29, 2011, defendants conducted a retaliatory online "smear campaign" against Germain, Piping Rock, and the two law offices that filed the class action suits against DLA. The smear campaign included nineteen allegedly libelous posts on various consumer-report websites, including eight identical posts directed at Germain and Piping Rock. Defendant Dobbs admits authoring the eight posts at issue. The text of the eight identical posts was originally posted on the website "Ripoff Reports." The text of that post was re-posted on other websites, including scaminfomer.com, getpayback.com, pissconsumer.com, complaintsboard.com, scamfound.com, and boardreader.com. In the posts, the author – defendant Dobbs allegedly acting on behalf of or at the direction of DLA and Lerner – accuses Piping Rock and Germain of having engaged in dishonest, fraudulent, and potentially criminal business practices. SAC ¶ 134-35, Ex. EE. Plaintiffs contend that Dobbs's statements are demonstrably false.

Defendants counter that beginning in January 2010, Germain commenced his own unlawful campaign to interfere with DLA's business through postings on his REIT Wrecks blog. In particular, they allege that Germain accused DLA of fraudulent criminal activity, lying to its investors, and scamming customers. Defendants point to twelve statements posted on REIT Wrecks that were allegedly authored by Germain or "encouraged and sanctioned" by him. Counterclaim ¶ 20. DLA and Lerner contend that these statement have no basis in fact. Moreover, DLA and Lerner also allege that Germain intended to interfere with DLA's client relationships and that some clients redeemed their investments after encountering negative information about them on the internet.

On April 9, 2012, plaintiffs filed a complaint against John Doe Nos. 1-6 in San Francisco County Superior Court, alleging libel and intentional interference with contractual relations under California law. On June 25, 2012, plaintiffs filed a first amended complaint, and later on July 17 and July 23, 2012, plaintiffs filed amendments to the first amended complaint naming Dobbs, Lerner, DLA, and John Doe Nos. 1-7 as defendants. On September 5, 2012, DLA and Lerner removed the action to federal court. On November 9, 2012, the Court denied defendants' motion to dismiss for lack of personal jurisdiction. On December 21, 2012, plaintiffs filed their second amended and restated complaint. On January 4, 2013, defendants answered and counterclaimed for tortious interference with contract, tortious interference with prospective business advantage, and commercial disparagement. Each side subsequently filed a motion to strike under California's anti-SLAPP statute.[1] On May 17, 2013, the Court granted plaintiffs' special motion to strike and denied defendants' special motion to strike. *See Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*, 946 F. Supp. 2d 957, 971 (N.D. Cal. 2013). Defendants timely appealed, and on July 13, 2015, the Ninth Circuit affirmed. *See Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*, No. 13-16110, 2015 WL 4187861 (9th Cir. July 13, 2015). Now before the Court, is plaintiffs'/counterclaim defendants' motion for attorneys' fees. Docket No. 112.

**LEGAL STANDARD**

The "prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1). "[A]ny SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees." *Ketchum v. Moses*, 24 Cal.4th 1122, 1131 (2001). "The dual purpose of this mandatory attorney fee award is to discourage meritless lawsuits and to provide financial relief to the victim of a SLAPP lawsuit 'by imposing the litigation costs on the party seeking to chill the valid exercise of the

---

[1] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 815 n.1 (2011). California Code of Civil Procedure § 425.16(b)(1) provides: "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

3

constitutional rights of freedom of speech and petition for the redress of grievances.'" *City of Los Angeles v. Animal Def. League*, 135 Cal. App. 4th 606, 627 n.19 (2006). "The defendant may recover fees and costs only for the motion to strike, not the entire litigation." *Christian Research Institute v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008). But, "an award of fees may include not only the fees incurred with respect to the underlying claim, but also the fees incurred in enforcing the right to mandatory fees" under the anti-SLAPP statute. *Ketchum*, 24 Cal.4th at 1141.

An award of attorney's fees and costs pursuant to section 425.16(c)(1) must be reasonable. *Minichino v. First Cal. Realty*, No. C-11-5185 EMC, 2012 U.S. Dist. LEXIS 177524, at *7 (N.D. Cal. Dec. 14, 2012) (citing *Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 362 (1995) ("We readily conclude section 425.16 similarly authorizes an award of *reasonable* attorney fees to the prevailing party.") (emphasis in original)). "[A] court assessing attorney fees begins with a touchstone or lodestar figure, based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case.'" *Ketchum*, 24 Cal. 4th at 1131-32; *see also Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) ("The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.").

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), *amended on other grounds by* 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11). The relevant community for purposes of determining the prevailing market rate is generally the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

In determining a reasonable amount of time spent, the Court should only award fees based on "the number of hours reasonably expended on the litigation" and exclude "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). "There is no precise rule or formula for making these determinations." *Id.* at 436. "The

4

court necessarily has discretion in making this equitable judgment." *Id.* at 437.

"As the moving party, the prevailing defendant seeking fees and costs bear[s] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. To that end, the court may require [a] defendant[] to produce records sufficient to provide a proper basis for determining how much time was spent on particular claims." *Alnor*, 165 Cal. App. 4th at 1320 (quotations and citations omitted). A court has broad discretion in determining the reasonable amount of attorney's fees and costs to award. *See Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 785 (1996).

**DISCUSSION**

Plaintiffs seek attorneys' fees and costs in the amount of $102,561.80 for 247 hours of attorney and clerk time billed in connection with bringing their anti-SLAPP motion (including briefing and oral argument), and this motion for fees (including anticipated fees incurred for oral argument). Docket No. 115, Pl. Rep. at 6, 10; Docket No. 112, Pl. Mot. at 5. Plaintiffs employed two law firms: Ball Law Corporation, which was responsible for the briefing, and Fleming & Fell PC[2], which was hired later in the litigation to handle oral argument. Defendants contest the reasonableness of plaintiffs' requested fees on a number of grounds. First, they argue that plaintiffs' use of block billing makes it impossible to discern whether the hours billed are compensable. In this regard, defendants contend that plaintiffs request fees for hours billed in connection with opposing defendants' motion to strike (which is not compensable) in addition to recovering fees for prosecuting its own motion to strike (which is compensable). Second, they argue that time billed in connection with plaintiffs' motion to strike and for the fee motion is duplicative, excessive, and not adequately documented. Third, they argue that fees billed by Mr. Ball are not compensable because he was a principal at Piping Rock, and the fee statute does not allow fees to be recovered when a party represents itself. Fourth, they argue that there is no evidence that fees were ever paid or billed, and that the fees are therefore not recoverable.

---

[2] Ms. Fell is now associated with Gomez Trial Attorneys, and continues to represent plaintiffs.

5

Notably, defendants do not contest, and therefore concede, that the rates charged by plaintiffs' counsel are reasonable.[3]

## I. Disaggregation of Compensable Work

Throughout their opposition, defendants argue that plaintiffs' counsels' use of block billing is inadequate and improper. *See e.g.* ("Plaintiffs have the burden of proving their entitlement to recovery, and block billing does not satisfy that burden."). In particular, defendants complain that the block billing method renders it impossible to disaggregate what work was performed prosecuting plaintiffs' motion to strike, from other non-compensable work (such as opposing defendants' motion to strike). *See S.B. Beach Properties v. Berti*, 39 Cal. 4th 374, 381 (2006) ("the fee 'provision applies only to the motion to strike, and not to the entire action.'") (internal citations omitted).

The party requesting fees bears the burden of establishing their reasonableness. "To that end, the court may require [a] defendant[ ] to produce records sufficient to provide 'a proper basis for determining how much time was spent on particular claims'… The evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended." *Alnor*, 165 Cal. App. 4th at 1320 (citing *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1020 (2001)). While the use of block billing may "exacerbate the vagueness of a counsel's fee request" that is not properly documented in the first instance, it is not "per se objectionable." *Alnor*, 165 Cal. App. 4th at 1325. Indeed, as plaintiffs note in their brief, block billing can be an "especially helpful compromise between reporting hours in the aggregate (which is easy to review, but lacks informative detail) and generating a complete line-by-line billing report (which offers great detail, but tends to

---

[3] These rates include $415 and $425 per hour for partners, $185 per hour for a first year associate, and $135 per hour for a law clerk. *See* Fell Decl. ¶ 9; Ball Decl. ¶¶ 2, 10.

obscure the forest for the trees)." *In Re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 920 (N.D. Cal. 2005). In fact, a party may prevail on a motion for attorneys' fees without submitting any billing records whatsoever. *Lunada Biomedical v. Nunez*, 230 Cal. App. 4th 459, 487-88 (2014) (a party "can carry its burden of establishing its entitlement to attorney fees by submitting a declaration from counsel instead of billing records or invoices.") (citing *City of Colton v. Singletary*, 206 Cal. App. 4th 751, 785 (2012)); *Raining Data Corp. v. Barrenechea*, 175 Cal. App. 4th 1363, 1375 (2009) ("The law is clear, however, that an award of attorney fees may be based on counsel's declarations, without production of detailed time records."). Accordingly, the Court must examine whether the documentation is sufficiently detailed to permit the identification of compensable versus non-compensable activity. The formatting of the documentation provided – whether block billed, or otherwise – does not control the Court's analysis.

Defendants challenge seven billing entries which they characterize as too vague to determine whether a portion of the time was spent on non-compensable activities. Defs Opp'n at 3-4. Plaintiffs concede that four of these entries, and a portion of a fifth entry, are non-compensable and that their inclusion was an "oversight." Pl. Rep. at 6. These entries total 3.1 billable hours. The remaining contested entries pertain to preparation for oral argument, traveling to oral argument, and attending oral argument (totaling 16.4 hours). The oral argument covered not only plaintiffs' compensable motion, but also defendants' motion to strike. Defendants' argue that these entries do not permit the Court to identify what portion of counsel's time was spent on compensable activity.

Generally, a party may only recover fees associated with prosecuting its own motion to strike, not for the entire lawsuit. However, expenses "incurred on common issues of fact and law qualify for an award of attorneys' fees under the anti-SLAPP statute and those fees need not be apportioned." *Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1184 (S.D. Cal. 2008).

Therefore "work that is inextricably intertwined with an anti-SLAPP motion is also compensable." *Braden v. BH Financial Services, Inc.,* 2014 WL 892897, *5 (N.D.Cal.2014). *See also Minichino v. First California Realty*, No. C-11-5185 EMC, 2012 WL 6554401, at *4 (N.D. Cal. Dec. 14, 2012) (motion to dismiss was "inextricably intertwined" with simultaneously filed motion to strike); *Graham–Sult v. Clainos,* 2012 WL 994754, at *4 (N.D.Cal. Mar.23, 2012) (awarding defendant fees for work performed directly on anti-SLAPP motion, in addition to "inextricably intertwined" work on indemnity and case management issues), *affirmed in part and vacated in part* by *Graham-Sult v. Clainos*, 756 F.3d 724, 752 (9th Cir. 2014) ("district court did not abuse its discretion by awarding fees for these activities"); *Henry v. Bank of Am. Corp.*, No. C 09-0628 RS, 2010 WL 3324890, at *4 (N.D. Cal. Aug. 23, 2010) (awarding fees for opposing plaintiff's discovery motion that was "inextricably intertwined" with defendant's anti-SLAPP motion).

As an initial matter, hours billed for travel to oral argument are compensable because they would have been incurred whether or not defendants had filed their own motion to strike. Additionally, the Court finds that the factual and legal issues involved in the parties' motions to strike were sufficiently intertwined to allow plaintiffs to recover for all hours billed for preparation for oral argument, and attending oral argument. The legal issues raised by the two motions are essentially identical, and there is significant overlap in the facts material to the respective motions. Indeed, during the course of this litigation defendants argued that the parties engaged in the "exact same conduct" -- namely, that plaintiff authored postings which were "nearly identical" to defendants', and on the exact same website. *Piping Rock Partners, Inc*, 946 F. Supp. 2d at 973. Given the substantial factual and legal overlap between the motions it would be impracticable to require plaintiffs to disaggregate the time spent on each motion as it relates to oral argument.[4] *See*

---

[4] "In 1997…the [California] Legislature amended section 425.16, effecting no substantive changes to the anti-SLAPP scheme, but providing that the statute 'shall be construed broadly.'

8

Fell Reply Decl. ¶ 4 ("Absent Defendants' motions, I would have had to do essentially the same amount of preparation work.").

## II. Reasonable Hours

Relying on *Maughan v. Google Tech., Inc.*, 143 Cal. App. 4th 1242 (2006), defendants argue that plaintiff's request for compensation for 217 hours of legal work related to their motion to strike is so unreasonable that it is "excessive on its face." Def. Opp'n 5-6. In *Maughan*, the Court of Appeals upheld the district court's reduction of compensable hours from the requested 200 hours, down to 50 hours. The Court reasoned that it was implausible that it would require 200 hours to prosecute the anti-SLAPP motion given that (1) the attorneys involved were highly experienced at litigating anti-SLAPP motions, and (2) the case was exceedingly simple. Neither of those factors characterizes the case at bar. While plaintiffs' attorneys have substantial litigation experience, none claims to have extensive experience with anti-SLAPP motions. Furthermore, most anti-SLAPP motions, including the present one, tend to present complex issues. *Alnor*, 165 Cal. App. 4th at 1319 ("SLAPP motions are generally difficult.").

The anti-SLAPP motion at issue involved roughly a dozen defamatory statements, three causes of action, and complex issues of law – such as whether certain websites constitute a "public forum." *See* Ball Rep. Decl ¶ 11 (plaintiffs cited over 70 cases in their anti-SLAPP motion). Therefore, the number of hours billed is not *per se* unreasonable as defendants suggest. Moreover,

---

(§ 425.16, subd. (a), as amended by Stats.1997, ch. 271, § 1." *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1119, 969 P.2d 564, 572 (1999). The California Supreme Court has noted that this amendment was enacted in no small part as a rejection of case law which unduly circumscribed the reach of the anti-SLAP statute. *Id.* at 1119-22. Courts should therefore interpret the statute broadly when analyzing whether an activity is "inextricably intertwined" with an anti-SLAPP motion such that it would be compensable. *See Metabolife Int'l, Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1223 (S.D. Cal. 2002).

9

"[d]efining what is reasonable by reference to other cases would violate the principle that 'each fee application under [the anti-SLAPP statute] must be assessed on its own merits . . . taking into account what is reasonable under the circumstances.'" *Graham-Sult*, 756 F.3d at 752 (affirming award of $240,00 for anti-SLAPP motion) (quoting *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*, 163 Cal. App. 4th 550 (2008)).

Next defendants contend that many of the hours billed are duplicative because they arise from plaintiffs' unreasonable choice to employ two separate law firms: Ball Law and Fell & Fleming. Defendants claim that it unreasonable that Ball Law – which was tasked with briefing related to plaintiffs' anti-SLAPP motion – billed 14 hours in helping prepare Ms. Fleming for the oral argument, and also billed hours for attending the oral argument even though they were not tasked with arguing the motion.

As an initial matter, it is not inherently unreasonable to employ two law firms to prosecute a single anti-SLAP motion, particularly in a case of this complexity. *Graham-Sult*, 756 F.3d at 753 (affirming district court's holding that it was reasonable to hire two firms to prosecute an anti-SLAPP motion); *see also Raining Data*, 175 Cal. App. 4th at 1376. Furthermore, the Court agrees that "the most efficient way for Ms. Fell to prepare for oral argument was to rely heavily on [Ball Law attorneys] to prepare her," as they were already familiar with the case. Pl. Rep. at 7. For the same reason, it was also reasonable to have Ball Law attorneys present at oral argument. *See* Fell Reply Decl. ¶ 6 ("I found it necessary to have Ball Law Corporation attend oral argument, given that the firm's breadth and depth of knowledge exceeded mine. I did, in fact, consult Jonathan Ball during oral argument and his input was valuable to me.").

Defendants take issue with the fact that Ms. Fell spent 6 hours revising the present motion for attorneys' fees after her junior associate spent 22 hours researching and drafting the motion and accompanying affidavits. Def. Opp'n at 4. Contrary to defendants' characterization,

delegating the bulk of the briefing to a junior associate was likely more efficient and resulted in reduced fees.

### III. Special Circumstances

Defendants argue that even if the Court finds the requested fees to be reasonable, special circumstances require a substantial reduction or an outright denial of the fee motion. Defendants argue, without citation to any case, that the lack of "evidence that the [requested] fees were paid, ever billed or ever to be charged" is fatal to plaintiffs' motion. However, it is well settled case law in this state that fees need not have been actually paid in order to be recoverable. *See Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 283, 105 Cal. Rptr. 2d 674, 690 (2001); *Macias v. Hartwell*, 55 Cal. App. 4th 669, 675-76 (1997).

Second, citing *Witte v. Kaufman* 141 Cal. App. 4th 1201 (2006), defendants argue that plaintiffs may not recover fees charged by Mr. Ball, who was once a principal at Piping Rock. Def. Opp'n 8-9; *see also* Docket 98-1 (archived Piping Rock website listing Mr. Ball as a member of the management team in February of 2011). In *Witte*, the Court of Appeal held that "an attorney litigating an anti-SLAPP motion on his own behalf is not entitled to attorney fees." *Id.* at 1208. Defendants reason that Mr. Ball in essence "represented himself" because he is a principal at Piping Rock, a closely-held corporation. However, while Mr. Ball may have been a principal of Piping Rock in February of 2011, he was no longer a principal by the time the conduct that gave rise to this litigation occurred. *See* Docket No. 102-2, July 5, 2013 Ball Decl. ¶ 2; Ball Rep. Decl. ¶¶ 4-5. Nor was he a principal at any time during the pendency of this litigation. *Id.*

Even if the Court were to find that Mr. Ball was acting as in-house counsel for Piping Rock, that would not preclude him from recovering fees in this case. In holding that in-house counsel were entitled to recover fees, the California Supreme Court reasoned that it could "discern

no basis for discriminating between counsel working for a corporation in-house and private counsel engaged with respect to a specific matter or on retainer. Both are bound by the same fiduciary and ethical duties to their clients. Both are qualified to provide, and do provide, equivalent legal services. And both incur attorney fees and costs[.]" *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1094 (June 2, 2000) (internal citations omitted). Throughout this litigation, Mr. Ball has been a partner and shareholder at Ball Law; he has maintained an attorney-client relationship with plaintiffs and observed all the attendant fiduciary and ethical duties that arise from such a relationship. He may therefore recover fees.

## CONCLUSION

The Court **GRANTS** plaintiffs' motion for fees. Plaintiffs' fee request is reduced by (1) the fees it conceded in its opposition it was not entitled to, and (2) fees plaintiffs anticipated expending on the oral argument for the present motion, which has now been vacated. These reductions total $7,361.50. Accordingly, the Court **ORDERS** defendants to pay plaintiffs $95,200.30 in fees and costs.

**IT IS SO ORDERED.**

Dated: August 18, 2015

_____
SUSAN ILLSTON
United States District Judge